CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

APR 0 1 2009

JOHN F. CORCORAN, CLERK
BY: /s/ Paula Oliver
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| PRE-FAB STEEL ERECTORS, INC., | CIVIL ACTION NO. 6:08-CV-00039 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| DAVID M. STEPHENS, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

This diversity action contains eight counts arising from allegations that Defendants defrauded Plaintiff over a period of at least five years. Plaintiff ("Pre-Fab Steel Erectors," "Pre-Fab," or "Plaintiff") demands a jury trial and seeks the following relief: compensatory damages of $1,000,000.00, trebled under the Virginia Business Conspiracy Act, Va. Code §§ 18.2-499 *et seq.*; $350,000.00 in punitive damages; and attorneys' fees, interest, and costs, pursuant, in part, to the Virginia Business Conspiracy Act. Defendants Robert B. Stephens ("Robert Stephens" or "Robert") and A.I.M. Insurance Agency, Inc. ("A.I.M."), have filed a motion to dismiss (docket no. 7), Plaintiff has filed a response (docket no. 15), and Defendants have filed a reply (docket no. 17). Upon consideration of the record, the motion to dismiss will be granted, in part, and denied, in part.

# I. FACTUAL ALLEGATIONS[1]

## A. Background

Plaintiff is incorporated under the laws of Indiana, its principal place of business is in Oregon, and it is a citizen of Indiana and Oregon for purposes of diversity jurisdiction. Records of the Virginia State Corporation Commission (the "Commission") indicate that the Commission has granted Plaintiff a certificate of authority, effective February 27, 2009, which is required, pursuant to Virginia Code § 13.1-758, for a foreign corporation to do business and "maintain a proceeding in any court in this Commonwealth. . . ."

Plaintiff erects steel and other structural work at construction projects throughout the United States. Jeff Wall, Plaintiff's president and sole shareholder, lives in Oregon but travels constantly among Plaintiff's job-sites. Wall became acquainted with Defendant David Stephens ("David Stephens," or "David"), who is not a party to the instant motion to dismiss, in the years 2000-2001, when Plaintiff was a subcontractor for another construction company, for whom David was a project manager. In 2002, David went to work for Plaintiff, joining Plaintiff as a sales representative at a salary of $1,500.00 per week. David used his home in Huntsville, Alabama, as his base of operations.

David recommended to Wall that his insurance consultants should be replaced by David's father, Defendant Robert Stephens, who operated an insurance agency, Defendant A.I.M., in Vinton, Virginia. Wall hired Robert on an independent contractor basis as Plaintiff's bookkeeper and insurance agent at the rate of $1,700.00 per month. Robert conducted business for Plaintiff from A.I.M.'s office in Vinton, as well as from his home in Bedford County.

---

[1] The facts recited herein are derived from the Complaint and are construed in the light most favorable to plaintiff. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989).

Case 6:08-cv-00039-NKM-mfu    Document 70    Filed 04/01/09    Page 2 of 34    Pageid#: 282

Plaintiff states that Wall "trusted both David and [Robert], and because of his constant travel schedule and the fact that they were rarely together in the same location, was unable to give close scrutiny to their activities." Robert served as the company's bookkeeper, and relayed the payroll information to the company's accountant, who then prepared paychecks from a separate payroll account and sent them to Robert to sign and distribute to employees. Robert had possession of the company's regular checking account and issued all the checks from that account to pay bills or reimburse employee expenses.

In 2007 Plaintiff's accountant obtained an extension of the filing deadline for Plaintiff's 2006 federal income tax return. Wall received the 2006 return from the accountant for his signature in approximately September of 2007, and noticed that it showed a huge increase in the company's business expenses. Wall then requested a copy of the 2005 return from the accountant, and verified that, for no apparent reason, the expenses had increased dramatically in 2006.

Wall asked David about the expenses, received vague explanations, and then, in September or early October of 2007, met with David in Alabama and confronted him. Plaintiff states that "David admitted wrongdoing," but does not specify David's admissions. Wall then terminated David's employment and Plaintiff's relationship with Robert. Wall also requested that Robert Stephens return the company records that Robert had been maintaining. Plaintiff asserts that, "[a]lthough [Robert] returned only a portion of the records, Mr. Wall then realized from an examination of the available records that David and [Robert] had been defrauding plaintiff."

Case 6:08-cv-00039-NKM-mfu   Document 70   Filed 04/01/09   Page 3 of 34   Pageid#: 283

## B. Count 1: Fraud – Unauthorized Pay Raises

Plaintiff states that, on February 3, 2005, David sent Robert an e-mail asking for an increase of $500.00 per week to David's weekly paycheck. On January 24, 2006, David sent another e-mail to Robert, seeking an to increase in his weekly pay to a total of $4,000, which amounts to annual pay of $208,000.00. Robert complied with both requests. Plaintiff maintains that Mr. Wall did not approve either increase and had no knowledge of them.

Plaintiff's agreement with Robert was for a monthly payment of $1,700 for Robert's bookkeeping services, and Robert also received commissions on the insurance policies that he procured for Plaintiff. However, Plaintiff states that "Wall only recently learned that [Robert] was actually paying himself $5,000 per month plus a[n unspecified] 'professional fee,'" and that Robert obtained unauthorized amounts, in addition to the agreed-upon terms of Robert's compensation, of at least $79,200.00 in the years 2006 and 2007. Again, Plaintiff maintains that Wall did not approve and had no knowledge of those amounts. Plaintiff adds the following: "[i]n taking the unauthorized payments, [Robert] was acting in both his individual capacity and as an officer and agent of AIM"; that "Defendants had a duty to disclose to plaintiff the material facts of the pay increases," which they violated by failing to disclose and willfully concealing "the material facts of the unauthorized pay increases from plaintiff"; that "Defendants engaged in the aforesaid acts of deceit willfully and intentionally, knowing that Mr. Wall trusted them and would likely be deceived by their actions"; and that, "[a]s a direct and proximate result of defendants' fraud, plaintiff has suffered damages, including the loss of substantial sums of money."

## C.  Count 2:  Conversion – Unauthorized Pay Raises

Plaintiff states that Defendants had a duty to request and disburse only those funds that were authorized by Plaintiff, that Defendants violated that duty when they "wrongfully exercised authority over plaintiff's funds," and that "Defendants engaged in the aforesaid conversion of plaintiff's funds willfully and intentionally."  Plaintiff adds that, "[a]s a direct and proximate result of defendants' conversion, plaintiff has suffered damages, including the loss of substantial sums of money."

## D.  Count 3:  Fraud – Forgery and Theft of Employee Paychecks

Plaintiff states that, in 2007, David submitted payroll information to Robert for certain employees who were no longer employed by Plaintiff, and requested that Robert issue paychecks for those employees. The paychecks to these former employees were then sent by Robert to David, who forged endorsements and deposited the checks into his own account.  The former employees did not receive the money from the checks.  Plaintiff maintains that "David had a duty to present only true information to plaintiff in his payroll requests and to deliver paychecks to the employees to whom the checks were written," but that, "[i]n violation of that duty, David willfully and intentionally presented false, material facts concerning payroll to an agent of plaintiff and converted the paychecks to his own account."  Plaintiff adds that, "[a]s a direct and proximate result of David's misappropriation, plaintiff has suffered damages, including the loss of substantial sums of money."

## E.  Count 4:  Conversion – Va. Code §§  8.3A-404 and 8.3A-405

Plaintiff maintains that "David's actions constitute conversion in violation of Va. Code §§8.3A-404 and 8.3A-405," and that," "[a]s a direct and proximate result of David's conversion, plaintiff has suffered damages, including the loss of substantial sums of money."

-5-

## F. Count 5: Fraud – Reimbursement Requests

Plaintiff states that, while David was employed by Plaintiff, he opened credit card accounts in his own name which he used, in part, for expenses related to Plaintiff's business. Plaintiff alleges that, on at least one American Express account, David added the company name below his. According to Plaintiff, David maintained these accounts primarily as personal accounts, but he also used the accounts partly for Pre-Fab business. David periodically sent requests to Robert seeking reimbursement for these accounts, and Robert reimbursed David knowing that the expenses were unrelated to the business. The account records were sent either to David's or to Robert's addresses, and Wall consequently did not see them until after terminating Plaintiff's relationships with David and Robert, when Wall discovered one of the American Express accounts by accident. According to Plaintiff, the limited American Express statements that Plaintiff has obtained show that Robert reimbursed David from Plaintiff's funds for numerous personal expenses unrelated to Plaintiff's business, including charges for airline tickets for flights from Rome to London, and hotels and restaurants in France and Italy. According to Plaintiff, Plaintiff did no business in Europe, and Robert was aware of this fact.

According to Plaintiff, David intentionally and willfully submitted reimbursement requests to Robert for personal expenses and claimed them as business expenses, and Robert issued the requested reimbursement payments with full knowledge that he was reimbursing David for expenses unrelated to company business. Plaintiff maintains that David had a duty to submit reimbursement requests only for legitimate business expenses, and that Robert had a duty to reimburse only legitimate business expenses, but that David violated that duty by willfully and intentionally presenting materially false reimbursement requests, which Robert knowingly, willfully and intentionally paid. Plaintiff adds that, "[a]s a direct and proximate result of

-6-

defendants' fraudulent actions, plaintiff has suffered damages, including the loss of substantial sums of money."

### G. Count 6: Breach of Fiduciary Duty

Plaintiff asserts that, as an employee, David owed a fiduciary duty to Plaintiff, and Robert, as an independent contractor, likewise owed a fiduciary duty to Plaintiff. Plaintiff maintains that "Defendants breached their fiduciary duty by their acts of fraud, misappropriation and conversion," that "[t]he breach of fiduciary duty was done maliciously, intentionally, and wantonly, and amounts to willful misconduct," and that, "[a]s a direct and proximate result of defendants' breach of fiduciary duty, plaintiff has suffered damages, including the loss of substantial sums of money."

### H. Count 7: Breach of Contract

Plaintiff states that Robert had an oral contract with Plaintiff to serve, on an independent contractor basis, as Plaintiff's bookkeeper and insurance agent at the rate of $1,700.00 per month, but that Robert breached the contract by paying himself $5,000.00 per month plus an unspecified "professional fee." Plaintiff maintains that, "[a]s a direct and proximate result of [Robert's] breach of contract, plaintiff has suffered damages, including the loss of substantial sums of money."

### I. Count 8: Conspiracy – Va. Code §§ 18.2-499 and 18.2-500

According to Plaintiff, "Defendants combined, associated, agreed, conspired and mutually undertook action for the purpose of willfully and maliciously injuring plaintiff in its business." Plaintiff adds that "Defendants acted intentionally, purposefully, and without lawful justification," and that, "[a]s a direct and proximate result of defendants' conspiracy, plaintiff has suffered damages, including the loss of substantial sums of money."

-7-

## J. Damages

As previously observed, Plaintiff seeks compensatory damages of $1,000,000.00 and punitive damages of $350,000.00. Additionally, Plaintiff requests that the damages award be "trebled pursuant to Va. Code §18.2-500." Plaintiff also requests the following: "attorney's fees and costs pursuant to Va. Code §18.2-500"; "interest on the damages award from January 1, 2006"; and "plaintiff's costs in this behalf expended."

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

## III. DISCUSSION

## A. Certificate of Authority from the Virginia State Corporation Commission

Defendants move to dismiss on the ground that Plaintiff's claims for fraud fail as a matter of law because "[u]nder Under Va. Code § 13.1-758, a foreign corporation transacting business in the Commonwealth without a certificate of authority may not maintain a proceeding in any

court in the Commonwealth until it obtains a certificate of authority from the Virginia State Corporation Commission."[2]

At oral argument on February 25, 2009, regarding another issue raised in this action, Plaintiff's counsel represented to the Court that Plaintiff had submitted an application for the requisite certificate with the Virginia State Corporation Commission. Furthermore, records of the Virginia State Corporation Commission indicate that Plaintiff was granted a certificate of authority, effective February 27, 2009.[3]

Accordingly, there is no reason to stay this action, and dismissal without giving Plaintiff an opportunity to obtain the certificate would have been inappropriate. "'When plaintiff obtained a certificate of authority to engage in business in Virginia after instituting this action, the barrier set out in Code § 13.1-119 was removed and plaintiff was afforded access . . . to continue its action against the defendant.'" *Quarles v. Miller*, 86 F.3d 55, 58 (1996) (quoting *Video Eng'g Co. v. Foto-Video Elecs., Inc.*, 207 Va. 1027, 154 S.E.2d 7, 9-10 (1967)); *see also Phlegar v. Virginia Foods, Inc.*, 188 Va. 747, 51 S.E.2d 227, 229-30 (1949) (plaintiff's failure to comply with a similar, predecessor statute requiring a certificate of authority "does not render the cause of action illegal. It is not the right to begin the action, but the right to maintain it, that is withheld for failure to comply with its terms. It takes no right away from the offending party

---

[2] Defendants assert that, because Plaintiff previously had not obtained the certificate, the instant Complaint must be dismissed pursuant to Federal Rules of Civil Procedure "12(b)(1), (b)(2) and (b)(6)." However, Defendants set out standards of review only for Rules 12(b)(6) and 12(b)(1), and Defendants present no arguments under Rule 12(b)(2) challenging the Court's personal jurisdiction over any Defendants, nor do Defendants present the certificate of authority issue as a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction. Accordingly, the Court declines to consider any challenge to its jurisdiction over Defendants or this matter.

[3] A court may properly take judicial notice of matters of public record when reviewing a complaint upon consideration of a Rule 12(b)(6) motion to dismiss. *Secretary of State v. Trimble Navigation*, 484 F.3d 700, 705 (4th Cir. 2007); *see also Hall v. Virginia*, 385 F.3d 421, 424 n. 3 (4th Cir. 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986)).

after compliance. When its terms are met, the barriers theretofore existing are removed."); *Moore v. Northern Homes of Pa.*, 80 F.R.D. 278, 282 (W.D. Va.1978) ("the prohibition of non-complying corporations maintaining lawsuits in Virginia courts is not so much a defense available to a litigant's adversaries, and therefore plausibly waivable, but is rather an absolute bar to the offender's use of the courts to press its claim until compliance with the statute is effected"; the court gave the defendant 30 days to obtain the necessary certificate of authority).

At the March 20, 2009, hearing on the instant motion, Defendants acknowledged that Plaintiff has obtained the certificate and that there is no reason to stay or dismiss the action. Accordingly, Defendants' motion to dismiss on the ground that Plaintiff failed to obtain a certificate of authority will be denied.

### B. Count 1 – Fraud – Unauthorized Pay Raises

#### 1. Pleading Fraud with Particularity

Defendants contend that Pre-Fab did not plead fraud in Count 1 with sufficient particularity because the Complaint allegedly fails to set forth facts that Robert made a false representation or that Pre-Fab relied upon such representation. Defendants also argue that Pre-Fab did not allege any words or conduct on Robert's part to conceal the pay increases or improper disbursements.

Where fraud is alleged, "the circumstances constituting fraud or mistake shall be pled with particularity." Fed. R. Civ. P. 9(b). In particular, the complaint must "specifically allege the time, place and nature of the fraud." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990). Fraud pleadings should include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Cars Unlimited II, Inc. v. National Motor Co., Inc.*, 472 F. Supp. 2d 740, 744

-10-

(E.D. Va. 2007) (quoting 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*: Civil § 1297, at 590 (2d ed.1990)); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999) ("[t]he second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive"; a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and that plaintiff has substantial prediscovery evidence of those facts).

Under Virginia law, "'[w]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence [sic] accordingly, and since [fraud] must be clearly proved it must be distinctly stated.'" *Mortarino v. Consultant Eng'g Servs.*, Inc., 251 Va. 289, 295 (1996)) (citations omitted). However, Virginia law permits fraud claims based upon a concealment to proceed upon "either an allegation or evidence of a knowing and a deliberate decision *not to disclose a material fact*." *Norris v. Mitchell*, 255 Va. 235, 240-41 (1998) (emphasis added); *see also Van Deusen v. Snead*, 247 Va. 324, 328 (1994) ("[f]or purposes of an action for fraud, concealment, whether accomplished by word or conduct, may be the equivalent of a false representation, because concealment always involves deliberate nondisclosure designed to prevent another from learning the truth. A contracting party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud.") (quoting *Spence v. Griffin*, 236 Va. 21, 28 (1988)); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 450 (1984) ("[c]oncealment of a material fact by one who knows that the other party is acting upon the

-11-

assumption that the fact does not exist constitutes actionable fraud") (citing *Clay v. Butler*, 132 Va. 464, 474 (1922)).

Here, Plaintiff has alleged that Defendants engaged in the specific conduct of having agreed to certain terms of compensation and then deliberately deciding not to disclose the material fact of paying themselves far and above those agreed-upon terms. Plaintiff specifically alleged that David asked Robert, in an e-mail dated February 3, 2005, for a $500 per week pay increase. Additionally, Plaintiff alleged that, in an e-mail dated January 24, 2006, David asked Robert for another pay increase to a total of $4,000 per week. Robert complied with both requests. Plaintiff also alleged that Robert paid himself $5,000 a month plus a "professional fee" well above the agreed-upon $1,700 per month for his bookkeeping services. According to Plaintiff, these unauthorized payments to Robert amounted to at least $79,200 in the years 2006 and 2007.

These specifically alleged facts sufficiently state a claim of fraudulent conduct. Plaintiff alleged that Defendants never disclosed their conduct of misappropriating Plaintiff's funds to Plaintiff, and that Plaintiff learned of the fraudulent conduct on its own, when a tax review indicated an unexpected increase in business expenses. Because Plaintiff alleged the specific misappropriations and concealed pay increases, this fraud action is not one in which Plaintiff is merely trying to ascertain facts through discovery, and the fraud allegations have been pleaded with sufficient particularity.[4] Not only do the allegations satisfy the Rule 9(b) requirements, but, as discussed above, the Complaint satisfies Virginia law for pleading fraud. *See Norris*, 255 Va.

---

[4] In addition to the specific allegations of fraudulent conduct, there may be allegations in the Complaint concerning reliance. *See Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677 (1985) (a statement "made to induce the promisee to act to his detriment . . . is actionable as an actual fraud"). Plaintiff alleged that David Stephens proposed that Wall hire Robert, and that Wall "trusted" Defendants and was "likely [to] be deceived by their actions."

Case 6:08-cv-00039-NKM-mfu   Document 70   Filed 04/01/09   Page 12 of 34   Pageid#: 292

at 240-41. As recounted in the preceding factual summary, Plaintiff alleged that Defendants "had a duty to disclose" to Plaintiff "the material facts of the pay increases"; that, "[i]n violation of that duty, defendants failed to disclose and willfully concealed the material facts of the unauthorized pay increases from plaintiff"; and that "Defendants engaged in the aforesaid acts of deceit willfully and intentionally, knowing that Mr. Wall trusted them and would likely be deceived by their actions." It is clear that Plaintiff has complied with *Norris* and alleged that Defendants engaged in "a knowing and a deliberate decision not to disclose a material fact."[5] 255 Va. at 240-41.

Defendants suggest that there can be no concealment because the pay increases allegedly were readily accessible on Plaintiff's tax returns, which were submitted to Pre-Fab's accountant. This argument is, in fact, a defense to the claim of fraud, which should be determined by the trier of fact, and not decided on a 12(b)(6) motion. The Court has insufficient information for making a determination whether Robert's disclosure of tax information or any other records to the accountant absolves Defendants of any responsibility not to engage in the alleged fraudulent self-dealing; nor does the Court have sufficient information to determine whether the availability of such records means that Plaintiff knew or should have known of the alleged fraudulent conduct.

Plaintiff has sufficiently alleged, *inter alia*, that Defendants engaged in "a knowing and a deliberate decision not to disclose a material fact." *Norris*, 255 Va. at 240-41. Under Virginia law, the Complaint is not lacking in particularity as to "what the fraud consists," and the Complaint provides Defendants with enough specifics that they "have the opportunity of

---

[5] The Court notes that a fiduciary engaging in self-dealing creates a presumption of fraud. *Al- Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 235 (4th Cir. 2000).

-13-

shaping" their defense. *Mortarino*, 251 Va. at 295. Moreover, at this early stage in a case, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Thus, for the same reasons that dismissal is not appropriate under Virginia law, dismissal under Rule 9(b) for failure to plead fraud with specificity is inappropriate here.[6]

Accordingly, Defendants' motion to dismiss on the ground that Plaintiff has not pleaded fraud with particularity will be denied.

### 2. Tort v. Contract

Defendants contend that Plaintiff's tort claims are an attempt to convert a breach of contract into a tort. Defendants rely primarily upon *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (1998), and similar cases holding that a tort cannot be claimed in conjunction with a breach of contract claim unless the plaintiff shows an independent common law duty separate from the contractual duty. In *Richmond Metro.*, the Supreme Court of Virginia observed the distinction between actions for tort and contract:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

---

[6] Furthermore, a court must balance Rule 9(b) and Virginia law regarding the pleading of fraud with the relaxed Rule 8(a)(2) "short and plain statement" requirement, and decide whether, given the nature and facts of the case and circumstances of the parties, the pleading in question is sufficiently particular to give a defendant notice. *Kline v. Nationsbank of Va., N.A.*, 886 F. Supp. 1285, 1295-96 (E.D. Va. 1995).

*Id.* (citation omitted). Significantly, *Richmond Metro* specifically observes that, under Virginia law, "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." *Id.* (citation omitted). The duty "breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.* (citation omitted).

The relevant question here, then, is whether the source of the violated duty sounds in contract or tort. Defendants are incorrect in their assertion that the fraud allegations in the Complaint are contractual in nature. The Complaint alleges that Defendants misappropriated Plaintiff's funds in order to pay unauthorized expenses and compensation above and beyond the agreed-upon terms, *i.e.*, the Complaint alleges that Defendants were malfeasant in their handling of Plaintiff's funds. Defendants state that "[t]he Complaint alleges that Robert Stephens exceeded his authority under the contract as to the amounts that were authorized to be paid."[7] However, the Complaint actually alleges that Defendants "looted" (as Plaintiff describes Defendants' actions in its response to the motion to dismiss) Plaintiff by misusing Robert's access, as Plaintiff's bookkeeper, to Plaintiff's funds. As described further herein, a claim that Robert had "exceeded his authority," as Defendants attempt to restate Plaintiff's allegations, might arguably state a contract claim of "nonfeasance," but Plaintiff's Complaint states a claim of fraudulent "malfeasance."

In *Richmond Metro*, a contractor submitted applications for payment that contained misrepresentations that it complied with the design specifications. The contract contained a provision mandating that the contractor was to submit sworn statements that it had completed the

_____

[7] Defendants add that, "[t]hough framed as a fraud claim, at issue really is what compensation the parties agreed upon." However, any dispute as to the agreed-upon terms of compensation is an issue of fact not appropriate for determination on a 12(b)(6) motion.

-15-

work in accordance with the contract. The Supreme Court of Virginia concluded that the contractor's false statements violated a specific obligation squarely addressed in the contract, *i.e.* the failure to submit a truthful statement, and that the only appropriate remedy was a cause of action for breach of contract. *Id.*, 256 Va. at 560.

*Insteel Industries, Inc. v. Costanza Contracting Co., Inc.*, 276 F. Supp. 2d 479 (E.D. Va. 2003), is pertinent here. *Insteel* observed that "*Richmond Metro* properly preserved the traditional distinction in Virginia law between 'a statement that is false when made (which is fraud) and a statement that becomes false only when the promisor later fails to keep his word (which is a breach of contract).'" *Id.* at 485 (citations omitted). *Insteel* dealt with a contractual duty to submit weekly invoices for the previous seven-day work period, and whether fraud claims regarding the overstatement of charges on the invoices sounded in tort or contract. *Id.* at 483-85. *Insteel* reasoned that, although the duty to submit weekly invoices arose from the contract, the fraud claim amounted to more than a failure to perform contractual obligations because the fraud claims were "more in the nature of *malfeasance* than nonfeasance." *Id.* at 485 (emphasis added). Because the invoices requesting payment for the previous seven day work period "did not include promises respecting future performance," the statements "were false" when the defendants submitted the invoices; "[u]nder Virginia law . . . such falsities give rise to an action for fraud," and the allegations in the complaint were, "therefore, properly characterized as sounding in tort rather than contract." *Id.* at 485-86. The fraud claims were of "the nature of malfeasance" rather than "nonfeasance" because, although the defendant may have been bound to contractual duties, there was "no contractual requirement respecting the veracity of the statements in the invoices," *id.* at 485, and the defendant's weekly invoices contained intentional misrepresentations:

> the claim for fraud is factually bound to the contract because the entire relationship between the parties, and the need to submit invoices for payment, arose from the contract. Nevertheless, the fraud claim states more than a claim for negligent performance, or non-performance, of the contract and is independent from any breach of the contract; therefore, the claim is properly characterized as a tort.

*Id.* at 486 (citations omitted).

Here, similarly, the tort claims of fraud in Count 1 arise from a common law duty separate and independent from any contractual duties arising from Plaintiff's arrangements with Defendants. Plaintiff alleges that Defendants took advantage of their access to Plaintiff's funds, dealt Plaintiff's funds to themselves, and failed to disclose and deliberately concealed the unauthorized pay raises and distributions. These are allegations not of a mere failure to perform the contract, *i.e.*, nonfeasance, but of malfeasance as *Insteel* recognized and distinguished from *Richmond Metro*. See also *Atlas Partners II, Ltd. P'ship v. Brumberg, Mackey & Wall, PLC*, slip op. at 7-8, Civil Action No. 4:05-cv-00001 (W.D. Va. Jan. 6, 2006) ("alleged fraudulent acts of nonfeasance are simply redundant of breach of contract claims while alleged fraudulent acts of misfeasance are capable of being independent fraud claims that could co-exist with a breach of contract claim") (citing *Richmond Metro* and *Insteel*). The fraud claim in Count 1 can co-exist with a breach of contract claim in this action, certainly at the motion to dismiss stage.

Accordingly, Defendants' motion to dismiss on the ground that Plaintiff's fraud claims are an attempt to convert a breach of contract into a tort will be denied.

### 3. Statute of Limitations

Under Virginia law, fraud claims must be brought within two years after the cause of action accrues. Va. Code § 8.01-243. The cause of action accrues when the fraud is discovered or by the exercise of reasonable diligence should have been discovered. Va. Code § 8.01-249.

-17-

Plaintiff alleges that the unauthorized pay raises and disbursement were not discovered until September 2007, when Wall examined the corporation's 2006 federal income tax return preparatory to signing it for submission to the Internal Revenue Service ("IRS"). According to Plaintiff, that was when it first became aware of the huge increase in the company's business expenses, and undertook further investigation. The Complaint was filed on November 4, 2008, a little over one year after Mr. Wall discovered the misappropriations and well within the two-year deadline.

Defendants argue that "there is no factual allegation that the allegedly improper payments were concealed from Mr. Wall. . . ." Such an assertion ignores Plaintiff's specific allegations that "defendants failed to disclose and willfully concealed the material facts of the unauthorized pay increases from plaintiff." Any dispute about whether Defendants concealed the fraud or whether and when Plaintiff should have discovered the fraud earlier is a question of fact and cannot be resolved on a motion to dismiss.[8]

---

[8] Defendants also assert that "Mr. Wall does not allege that he did not have access to the bank statements." Such a statement attempts to improperly shift the burden of proof in a statute of limitations argument. That burden is squarely on the party asserting the defense. *See, e.g., In re Varona*, 388 B.R. 705, 722 -23 (Bkrtcy. E.D. Va. 2008) ("[w]here a party pleads the statute of limitations as a defense, that party has the burden of showing by a preponderance of the evidence that the cause of action arose prior to the statutory period before the action was instituted"). In addition, the issue of whether Mr. Wall had ready access to the bank account records is a question of fact and cannot be resolved on a motion to dismiss.

At the March 20, 2009, hearing on the instant motion to dismiss, counsel for Defendants argued that "paragraph 13 [of the Complaint] says Wall realized from an examination of the available records – he refers to the available records – that David and Bob had been defrauding him" and, according to counsel, because Wall's "own statement in paragraph 13 of the complaint" indicates that these records were "available," Wall should have known of Defendants' conduct, because "Mr. Wall had the ability to see anything that he wanted as far as what he was – what Mr. Stephens was doing. . . ." The Court notes that Defendants have taken out of context the reference to "available records" in paragraph 13 of the Complaint, which actually states that, *after* Wall terminated Plaintiff's relationships with Robert and David Stephens, Wall requested that Robert "return the company's records that [Robert] was maintaining," but that Robert "returned only a portion of the records," and Wall nonetheless "realized from an examination of the available records that David and Bob had been defrauding plaintiff."

Accordingly, Defendants' motion to dismiss on the ground that Plaintiff's claims are barred by the statute of limitations will be denied.

## B. Count 2 – Conversion – Unauthorized Pay Raises

### 1. Tort v. Contract

Defendants argue that Plaintiff's conversion claim regarding the unauthorized pay raises fails to allege an independent tort claim. However, plaintiffs have been permitted to assert conversion claims in conjunction with a breach of contract claim. *See, e.g., Combined Insurance Company of America v. Wiest*, 578 F. Supp. 2d 822 (W.D. Va. 2008); *see also PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 344 (2003) ("[a] cause of action for conversion lies independent of an action in contract and may provide a separate basis, distinct from the contract, upon which one partner may sue another").[9] The defendant in *Combined Insurance* was employed as a regional manager for the plaintiff insurance company and entered into an employment contract with the plaintiff. The contract provided that the defendant would return all confidential information belonging to the insurance company, would not recruit the company's employees, and would not solicit the company's policyholders for two years following termination. The plaintiff alleged that, despite these obligations, the defendant recruited employees and solicited policyholders while still employed with the plaintiff. Applying the principles elucidated in Virginia precedent, including, *inter alia, Richmond Metro*, the Court denied the defendant's 12(b)(6) motion and permitted the plaintiff to allege both a conversion and a breach of contract claim, because conversion is based upon duties under common law irrespective of the presence of any contract. *Id.* at 833. The Court concluded that "'the duty not to convert the property of

---

[9] *See* n. 10, *infra*, for further discussion regarding *PGI, Inc.*

-19-

another for one's own purposes' exists in the absence of any contract, and thus provides the basis for an 'independent tort from the contract claims' arising out of the parties' relationship." *Id.* at 833 (quoting *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004)).

Relying chiefly upon the unpublished *per curiam* opinion of the United States Court of Appeals for the Fourth Circuit in *Dator Corp. v. Rufus S. Lusk & Son, Inc.*, 57 F.3d 1065 (Table) (4th Cir. 1995), Defendants contend that "the conversion claim in this case does not amount to an independent tort separate and apart from a breach of contract claim." *Dator Corp.*, however, is readily distinguishable from the instant matter. In *Dator Corp.*, the parties entered into a contract in which the defendant agreed to provide real estate data to the plaintiff. In a counterclaim, the defendant alleged that the plaintiff improperly used the data for purposes other than those specified in the contract, thus violating the agreement. A provision in the contract provided "that the data was 'proprietary to [the defendant]' and that [the plaintiff] could not use the data 'except for the license and use' granted by the contract." In addition to the breach of contract claim, the defendant further alleged that the plaintiff wrongfully converted the data. The court found that the conversion did not amount to an independent tort because it was based squarely on the explicit contract provision permitting limitations on use. Significantly, the Court of Appeals observed that there was "no basis for [the conversion] claim outside the contract, as evinced by [the defendant's] reliance on specific contractual provisions in propounding its 'conversion' claim."

In the instant action, Plaintiff's allegations do not rely upon any contractual provision. As in *Combined Insurance*, it is clear that Plaintiff is not merely asserting another breach of contract masked as a conversion claim, but is alleging that the defendants wrongfully converted Plaintiff's money. Plaintiff is not relying upon any contract language or obligation as the basis

-20-

for the duty that defendants violated, but rather is relying on the common law duty "not to convert the property of another for one's own purposes." *Combined Insurance*, 578 F. Supp. 2d at 833. The conversion claim may stand here regardless of whether a contract exists.

Accordingly, Defendants' motion to dismiss on the ground that Plaintiff's conversion claims sound strictly in contract and fail to allege an independent tort will be denied.

### 2. Conversion of Money

Defendants argue that a conversion claim applies only to tangible personal property and not to intangible property such as money unless it is traceable to tangible property. Virginia law defines conversion as any distinct act of dominion or control wrongfully exerted over the property of another, either inconsistent with, or in denial of, the owner's rights. *Hairston Motor Co. v. Newsome*, 253 Va. 129, 135 (1997). A plaintiff seeking recovery on a claim of conversion must prove that the defendant converted it by "any" wrongful exercise of dominion or control that deprived the plaintiff of his rightful possession. *See, e.g., Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956), citing 19 *Michie's Jurisprudence*, Trover and Conversion, § 4 at 27. The Virginia Supreme Court, in *Universal C.I.T.*, provided the following description of conversion:

> Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved, the plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence, knowledge or ignorance.

*Id.* at 76.

As a rule, a wronged party can recover money converted if the possessor did not receive it in good faith or for valuable consideration, even if the money has changed forms. *See, e.g., Bader v. Central Fid. Bank*, 245 Va. 286 (1983) (where the plaintiff's bank paid on a forged

-21-

instrument, the plaintiff could bring suit against the bank for conversion of the instruments); *see also In re Whitacre Sunbelt, Inc.*, 211 B.R. 411, 417-18 (Bankr. N.D. Ga.1997); Restatement (Second) of Torts § 229 cmt. d (1965). In order to recover in conversion for money that has changed forms, the proceeds must be traceable to the original conversion. *Central Nat'l Bank v. Connecticut Mut. Life Ins. Co.*, 104 U.S. 54, 66-68, 26 L.Ed. 693 (1881) ("[money's] character is not changed by being placed to [a holder's] credit in his bank account." Id. at 66). Thus, in the instant action it appears that proceeds that can be traced to Defendants' alleged embezzlement or conversion of money can be recovered by Plaintiff, and dismissal on a 12(b)(6) motion is inappropriate.

Defendants, relying upon *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299 (1994), allege that the allegedly converted funds are an "undocumented intangible property right" and thus are not subject to the law of conversion. In *United Leasing*, a corporate officer of defendant Thrift Insurance forged documents that secured his personal loan. The forged documents purportedly were a guaranty of his parents to secure their son's loan by pledging a number of shares of stock they held in Thrift Insurance. When the officer defaulted, plaintiff United Leasing demanded that Thrift turn the shares of stock over to it. The Supreme Court of Virginia held that United Leasing never had a right to the shares, but had only an "undocumented intangible property right" that did not give rise to a common law cause of action for conversion. *Id*. at 304-06. Defendants' argument fails, then, because unlike the defendant in *United Leasing*, Plaintiff's claims indicate that it had a right to its funds at the moment of the alleged conversion.[10] The allegations are that Defendants fraudulently obtained funds from Plaintiff's

---

[10] *See also PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334 (2003), wherein the Supreme Court of Virginia
(continued...)

accounts; that Defendants never had a right to those funds; and that Plaintiff remained the rightful owner of those funds. Accordingly, Plaintiff's claim is not to an "undocumented intangible property right," but to a clearly established property right, and Defendants' motion to dismiss on this ground will be denied.

## C. Count 5 – Fraud – Reimbursements

### 1. Pleading Fraud with Particularity

As with Count 1, Defendants argue that, regarding the allegedly self-dealt reimbursement payments, Plaintiff failed to plead fraud with the requisite specificity. Defendants contend that Plaintiff failed to plead a misrepresentation of present existing material fact and reliance on such misrepresentation. It is clear, however, that Plaintiff alleges that David submitted false business expenses to Robert for payment, such as fares for international flights and meals and lodging in European cities. Plaintiff contends that Robert defrauded the company by reimbursing his son for those expenses from company funds despite knowing that these expenses were unrelated to the business, as Robert knew that Pre-Fab did no business in Europe. In Plaintiff's view, by paying those expenses and withholding the disclosure of those expenses to Plaintiff, Robert misrepresented to Plaintiff that he was paying legitimate business expenses. Plaintiff alleged that these misrepresentations were material and false. In essence, Plaintiff alleges that

---

[10](...continued)

applied the principles set forth in *United Leasing* and *Universal C.I.T.* In *PGI, Inc.*, the plaintiff and the defendant formed a joint venture with a third party to conduct a feasibility study. After completion of the study, the third party failed to pay the full amount that was invoiced to it. Defendant Rathe demanded payment from the third party and ultimately obtained a money settlement. Rathe, however, failed to notify plaintiff PGI of the settlement and failed to share the settlement proceeds. After PGI learned of the settlement and Rathe refused to share the funds, PGI brought a claim for conversion of the money. The Supreme Court ruled that all the elements of a cause of action for conversion were present, because, "contrary to its express agreement to do so," Rathe had "without justification withheld settlement proceeds from PGI." *Id.* at 344. The Court determined that, "[u]pon the evidence presented, the jury was entitled to find that Rathe without justification wrongfully withheld settlement proceeds from PGI. None of the elements to sustain a cause of action for conversion are missing." *Id.*

-23-

Defendants acted together to deceive Plaintiff. Not only did Plaintiff plead a misrepresentation of a present material fact, but it also alleged that it trusted and relied upon David and Robert that the checks would be issued "to pay bills or reimburse employee expenses." This reliance is based upon the allegation that Wall was unable to give close scrutiny to Defendants' activities because of his constant travel schedule and that he and Defendants were rarely together in the same location.

As discussed with respect to Count 1 above, the allegations of the facts setting forth material misrepresentations and reliance thereon are more than sufficient to satisfy the purposes for heightened pleading set forth in *Cars Unlimited*, 472 F. Supp. 2d at 744, and the Complaint sufficiently alleges that Defendants committed "a knowing and a deliberate decision not to disclose a material fact," *Norris,* 255 Va. at 240-41. Accordingly, Defendants' motion to dismiss on this ground will be denied.

### 2. Tort v. Contract

As with Count 1, Defendants argue that Count 5 attempts to transform a breach of contract claim into a tort claim. For the reasons set forth above regarding Count 1, the tort claim of fraud in Count 5 arises from a common law duty separate and independent from any contractual duties arising from any contract. Plaintiff alleged that Robert "knowingly, willfully and intentionally paid those materially false reimbursement requests." Count 5 alleges that Robert intentionally defrauded Plaintiff by disbursing Plaintiff's money to David, Robert's son, for expenses that were personal and obviously unrelated to Plaintiff's business, and does not allege a mere failure to perform the contract, *i.e.*, nonfeasance, but alleges malfeasance in the nature of a tort. At the motion to dismiss stage of this action, the allegations of fraud suffice to

-24-

co-exist with breach of contract claims. Accordingly, Defendants' motion to dismiss on this ground will be denied.

### 3. Statute of Limitations

As with Count 1, Defendants assert that the fraud claim in Count 5 is barred by the statute of limitations. However, as with Count 1, the Complaint alleges that the unauthorized reimbursement requests were not discovered until September 2007, when Mr. Wall examined the corporation's 2006 federal income tax return preparatory to signing it for submission to the IRS, and learned for the first time of the huge increase in the company's business expenses. Subsequently, Wall investigated further and learned of the unauthorized reimbursements. The Complaint was filed on November 4, 2008, a little over one year after Mr. Wall discovered the misappropriations and well within the two year deadline from the date of discovery.

Defendants argue that "there is no factual allegation that the allegedly improper payments were concealed from Mr. Wall. . . ." Such an assertion ignores Plaintiff's allegations that "[t]he account records were sent either to David's or to [Robert's] addresses, and Mr. Wall consequently did not see them." Any dispute about whether Defendants concealed the fraud or whether Plaintiff should have discovered the fraud earlier is a question of fact and cannot be resolved on a motion to dismiss.[11] Accordingly, Defendants' motion to dismiss on this ground will be denied.

### D. Count 6 – Breach of Fiduciary Duty

Defendants argue that, on these facts, a breach of fiduciary duty claim can be asserted only against Plaintiff's employee, David Stephens, and not against the Defendants who are

---

[11] Defendants again assert that "Mr. Wall does not allege that he did not have access to the bank statements." *See* n. 8, *supra.*

parties to the instant motion to dismiss. Plaintiff now concedes that its Complaint alleges a breach of fiduciary duty claim only against Defendant David Stephens, and not the Defendants who are parties to the instant motion to dismiss. Accordingly, the motion to dismiss this count will be granted as to Defendants Robert Stephens and A.I.M.

## E. Count 7 – Breach of Contract

Defendants argue that the allegations of this count are insufficiently specific and should therefore be dismissed. However, the Complaint specifically alleges that the contractual agreement between the parties was for Robert to be compensated at the rate of $1,700.00 per month, but that he breached the contract by paying himself at least $5,000 per month. As the Complaint also alleges throughout, the defendants concealed their wrongdoing and, consequently, Plaintiff is still in the process of discovering its full extent. Plaintiff further alleges that, based upon Plaintiff's review of "the limited records available," it appears that Robert paid himself an unspecified "professional fee" in addition to the $5,000.00 per month, but that discovery will be required in order to determine the extent and nature of the "professional fee." It appears to the Court that the allegations of Count 7 satisfy the Rule 8 notice pleading requirements, and properly state a claim for breach of contract.[12] Moreover, it is well-known that, "[u]nder Virginia law, every contract contains an implied covenant of good faith and fair dealing in the performance of the agreement," and the allegations in the instant Complaint suggest that Defendants failed to so perform. *Penn. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va. 1987); *see also A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986) ("[a]ll contracting parties owe to each other a duty of good faith in the

---

[12] Defendants also argue that Plaintiff has failed to specify damages. However, the Complaint throughout includes allegations of specific amounts, and it closes with an *ad damnum* clause.

-26-

performance of the agreement" (citing Restatement (Second) of Contracts § 205 (1981)). Accordingly, Defendants' motion to dismiss on the ground that the breach of contract claims are insufficiently specific will be denied.

## F. Count 8 – Conspiracy under Va. Code §§ 18.2-499 and 18.2-500

Count 8 re-alleges all of the allegations in the preceding 48 paragraphs of the Complaint and states that "Defendants combined, associated, agreed, conspired and mutually undertook action for the purpose of willfully and maliciously injuring plaintiff in its business." Plaintiff adds that "Defendants acted intentionally, purposefully, and without lawful justification," and that, "[a]s a direct and proximate result of defendants' conspiracy, plaintiff has suffered damages, including the loss of substantial sums of money." Plaintiff asserts that this conduct violated the Virginia Business Conspiracy Act, Va. Code §§ 18.2-499 *et seq.*

Under Virginia Code § 18.2-500, "[a]ny person who [is] injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499" may seek relief in a civil court. Va. Code § 18.2-500. (West 2004 Repl. Vol., 2008 Cum. Supp.). The relevant portion of Virginia Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever. . . ." Va. Code § 18.2-499.

To ultimately prevail under the Virginia Business Conspiracy statute, a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and (3) causally related injury. *See Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 144 F. Supp. 2d 558, 601 (W.D. Va. 2001), *aff'd on other grounds sub nom., Va. Vermiculite,*

-27-

*Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277 (4th Cir. 2002); *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526 (4th Cir. 1997).

"Concerted action" reflects the statutory requirement that a plaintiff ultimately prove that someone "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. See Va. Code Ann. § 18.2-499; *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 677 (2001). This means that a plaintiff must prove that the defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted). After all, this "common design is the essence of the conspiracy." *Id*. To survive a motion to dismiss, then, a plaintiff "must at least plead the requisite concert of action and unity of purpose," and must do so "in more than mere conclusory language." *Id*. (internal quotation marks omitted).

"Legal malice" requires showing "that the defendant acted intentionally, purposefully, and without lawful justification" to injure the plaintiff. *Simmons*, 544 S.E.2d at 677. A plaintiff need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business, but, importantly, the plaintiff must prove that such a purpose was at least one of the purposes of the conspiracy. *Id*. at 676-77.

-28-

Defendants claim that Count 8 makes only indefinite, vague and conclusory allegations,[13] and that Plaintiff suffered no injury to its business as a result of the conspiracy,[14] and therefore cannot establish a required element under the conspiracy statutes.[15]

I am compelled to find that Plaintiff's allegations of a violation of Va. Code § 18.2-499 are sufficient to withstand the motion to dismiss. The allegations suggest that Defendants Robert and David Stephens may have acted in concert. And, although Plaintiff stated arguably conclusory allegations in Count 8 that Defendants acted with the required *mens rea, i.e.,*

---

[13] Count 8 re-alleges all of the specific allegations contained in the preceding 48 paragraphs of the Complaint, such as the unauthorized pay raises, improper reimbursement requests, and other misappropriations of Plaintiff's funds. In particular, Plaintiff alleged specific facts that David asked Robert, in two e-mails dated February 3, 2005, and January 24, 2006, for a $500 and $2,000 per week pay increase, and Robert complied with both requests. Moreover, Plaintiff alleged that David submitted expenses to Robert for reimbursement that were unrelated to the business, such as flights from Rome to London and hotels and restaurants in France and London, and that Robert made the payments to David with full knowledge that such expenses were unrelated to Plaintiff's business. These specific facts suggest that Defendants acted in concert with one another for the purpose of promoting their own self-gain, to Plaintiff's detriment. The Complaint clearly puts Defendants on notice as to the nature and extent of the conspiracy.

[14] However, Plaintiff alleges that it lost "substantial sums of money" as a direct and proximate result of the conspiracy, and that, by being deprived of the money allegedly siphoned off by Defendants' conspiracy, it was unable to reap the profits the money would have provided to the business. Plaintiff claims compensatory damages of $1,000,000.00 as a result of Defendants' actions. The Supreme Court of Virginia has made it clear that conspiracies that interfere with a business's right to reap profits fall within the coverage of §§ 18.2-499 and 18.2-500. *See, e.g., Chaves v. Johnson*, 230 Va. 112, 120 (1985).

[15] Defendants further suggest that, because David and Robert have some connection to the corporate Plaintiff, the intra-corporate immunity doctrine is triggered. This doctrine applies, however, only if the persons who took part in the conspiracy were agents or employees of the corporation, and were acting within the scope of their employment or agency. *See, e.g., Fox v. Deese*, 234 Va. 412, 428 (1987); *see also White v. Potocska*, 589 F. Supp. 2d 631 (E.D. Va. 2008). Plaintiff alleged that Robert was an independent contractor, not an employee, and Defendants placed great emphasis on that allegation in their argument that Robert could not be liable for a breach of fiduciary duty because he was not Plaintiff's employee, and Plaintiff has now conceded that a claim for breach of fiduciary duty does not lie against Robert because he is an independent contractor, not an employee. Thus, because Robert was an independent contractor and not an employee, the intra-corporate immunity doctrine does not apply.

   Even assuming that both Robert, individually and on behalf of A.I.M., and David are employees or agents of Pre-Fab, the intra-corporate immunity defense likely does not apply because the allegations claim that the employees or agents were acting outside the scope of their employment or agency. *Fox*, 234 Va. at 428. Whether Defendants were acting within the scope of their employment or agency is a question of fact and cannot be resolved at this stage of the litigation. *Id.* at 428.

-29-

intentionally and purposefully, these arguably conclusory allegations, in combination with the rest of the Complaint, sufficiently support an inference of the requisite legal malice.[16] Additionally, and for the same reasons, the allegations of business conspiracy are pleaded with sufficiently particularity. "[B]usiness conspiracy, like fraud, must be pleaded with particularity, and with more than mere conclusory language. The heightened pleading standard prevents every business dispute [from] becoming a business conspiracy claim." *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (internal quotation marks omitted). Here, although the allegations of business conspiracy in Count 8 are arguably conclusory, the Complaint is sufficiently specific and particular in its entirety to support an inference that the required elements of concerted action, legal malice, and causally related injury have been pleaded.[17] And, significantly, nothing presented by Defendants thus far, at the Rule 12(b)(6) stage of this matter, would support a conclusion that this is a mere "business dispute" being transmuted into a "business conspiracy claim." *Id.* For these reasons, I believe that the Virginia Business Conspiracy Act claims are sufficiently pleaded. I am unable to conclude at present that, were Plaintiff to prove all of the allegations in its Complaint, it would be unable to recover, as a matter of law, under the Virginia Business Conspiracy Act. *See Schlegel v. Bank of*

---

[16] Malice may be averred generally. *See College Loan Corp. v. SLM Corp.*, Civil Action No. 1:2002-cv-1377 (E.D. Va. Dec. 10, 2002) (the fact that the element of malice was not pled by specifically alleging particular facts supporting legal standard of malice was not fatal to the complaint because malice could be averred generally), *rev'd and remanded on other grounds*, 396 F.3d 588 (4th Cir. 2005). And, while malice requires a showing that defendants acted intentionally, purposefully, and without legal justification, the statute does not require a plaintiff to prove that a conspirator's primary and overriding purpose is to injure another in his trade or business. *See Atlas Partners II, Ltd. P'ship v. Brumberg, Mackey & Wall, PLC*, Civil Action No. 4:05-cv-00001 (W.D. Va. Jan. 6, 2006) (evidence of concerted actions sufficed to show that defendants worked together to damage plaintiffs; that damaging plaintiffs might not have been defendants' primary purpose was immaterial under Virginia law).

[17] *See Schnelling v. Crawford* (In re James River Coal Co.), 360 B.R. 139 (Bankr. E.D. Va. 2007) (where a liquidating trustee of corporate bankruptcy debtors alleged that insiders of the debtors combined, agreed, or mutually undertook to willfully and maliciously loot the debtors, and described the unlawful acts that were taken in furtherance of the conspiracy, the trustee stated a viable claim under Virginia law for statutory conspiracy).

*America, N.A.*, 505 F. Supp. 2d 321, 328 (W.D. Va. 2007) ("because Plaintiff has not pled his business conspiracy claim with particularity – indeed, he has failed to even plead two of the elements of business conspiracy (concerted action and legal malice) – Plaintiff's complaint must fail. To put it more simply, even if Plaintiff could prove all of the allegations in his complaint, he would be unable – as a matter of law – to recover under Virginia Code § 18.2-500.")[18]

To the extent Defendants contend that Count 8 attempts to turn a breach of contract claim into a tort claim, this contention fails for the reasons set forth concerning Count 1. The business conspiracy claim at the heart of Count 8 arises from a common law duty separate and independent from any contractual duties arising from the oral employment contract. In *Catercorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22 (1993), the Supreme Court of Virginia found that the plaintiff alleged sufficient facts for both breach of an employment agreement and business conspiracy. In particular, the plaintiff catering company alleged that a former employee had breached the terms of an employment agreement and conspired with another employee to establish a competing catering business. *Id.* at 26. The Supreme Court thus recognized that a duty stemming from an obligation under an employment contract differs from the duty underlying a business conspiracy claim under § 18.2-499 and § 18.2-500.

For these reasons, Defendants' motion to dismiss Plaintiff's claims under the Virginia Business Conspiracy Act will be denied.[19]

---

[18] Summary judgment has been granted where a plaintiff has provided no evidence of an agreement or intent to injure, both of which are required to establish a business conspiracy under §§ 18.2-499 and 18.2-500; in the absence of such evidence, a reasonable jury could not conclude that the parties were criminally and civilly liable under the theory of business conspiracy. *See DAG Petroleum Suppliers LLC v. BP PLC*, 452 F. Supp. 2d 641 (E.D. Va. 2006).

[19] In their reply to Plaintiff's response to the motion to dismiss, Defendants cite *Selman v. American Sports Underwriters, Inc.*, 697 F.Supp. 225, 238 (W.D. Va. 1988), to support their assertion that "[b]ecause David and
(continued...)

-31-

## G. A.I.M. Insurance Agency

### 1. Agency Relationship

Defendants argue that Plaintiff has failed to state any claim against A.I.M. However, paragraph 6 of the Complaint alleges, in part: "At all times relevant to this matter, [Robert] was acting individually and as agent and president of defendant [A.I.M.] within the scope of the business of A.I.M." Additionally, paragraph 7 alleges, in part: "At all times relevant to this matter, defendant [A.I.M.] was acting by and through its agent and president, Robert Stephens." Plaintiff further alleged that Robert "operated an insurance agency, defendant AIM, in Vinton, Virginia," and that "[Robert] conducted business for plaintiff from AIM's office in Vinton. . . ." The Complaint thus clearly alleges an agency relationship between Robert and A.I.M. Pursuant to basic agency law, A.I.M. could be liable for the actions of Robert Stephens as alleged in the Complaint. *See, e.g., Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824 (1943); *Dudley v. Estate Life Ins. Co. of America*, 220 Va. 343 (1979); *Broaddus v. Standard Drug Co.*, 211 Va. 645 (1971). Accordingly, the motion to dismiss on this ground will be denied.

### 2. Economic Loss Rule Does Not Bar Recovery

Defendants contend that the economic loss rule bars recovery against A.I.M. This rule, however, does not apply when the defendant has breached a duty imposed by law rather than by

---

[19](...continued)
Pre-Fab are one for the purposes of the conspiracy statute and Robert Stephens and A.I.M. are also one, Robert Stephens has no one to conspire with under the facts of this case. . . ." Defendants' assertion is incorrect, and reflects a misunderstanding of *Selman*, which merely restated the principle that, "[s]ince a corporation is merely a legal entity wholly created by law, it can only act through its agents, officers, and employees; therefore, a conspiracy between a corporation and the agents of that corporation who are acting in the scope of their employment is a legal impossibility." *Id.* (citing *Griffith v. Electrolux Corp.*, 454 F.Supp. 29, 32 (E.D. Va. 1978). The instant Complaint does not allege any conspiracy between the corporation and employees or agents acting in the scope of their employment.

contract. *City of Richmond, Va. v. Madison Management Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990). The Supreme Court of Virginia has noted that, while "economic losses" that "are purely the result of disappointed economic expectations" "are not recoverable in tort," and that "[t]he law of contracts provides the sole redress for such claims," economic loss damages are recoverable in "tort actions such as fraud, conspiracy to injure another in a trade, business or profession, or tortious interference with contract." *Ward v. Ernst & Young*, 246 Va. 317, 325, n.2 (1993). As set forth previously, Counts 1, 2, 5, and 8 of the Complaint allege intentional torts against Robert Stephens and A.I.M. The economic loss rule has no apparent applicability in this case thus far, and the motion to dismiss on this ground will be denied.

## H. Punitive Damages

Defendants argue Plaintiff is not entitled to punitive damages because Plaintiff fails to allege independent, willful torts other than a breach of a contractual duty. However, as previously observed, Counts 1, 2, 5, and 8 of the Complaint allege intentional torts against Robert Stephens and A.I.M. In Counts 1, 2, and 5, Plaintiff alleges that the torts were committed "willfully and intentionally." In Count 8, Plaintiff alleges that Defendants undertook action "for the purpose of willfully and maliciously injuring plaintiff in its business" and that Defendants acted "intentionally, purposefully, and without lawful justification." The Complaint makes sufficient allegations to support the claim for punitive damages.

## IV. CONCLUSION

For the stated reasons, Defendants' Motion to Dismiss (docket no. 7) will be granted, in part, and denied, in part.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record

Entered this _1st_ day of April, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE